NOT DESIGNATED FOR PUBLICATION

No. 125,045

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
JIMMIE A. SEBEK.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed February 17, 2023. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Shannon Grammel*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ISHERWOOD, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Jimmie A. Sebek has been an inmate held at the Larned State Hospital for treatment as a sexually violent predator since 2012. Most recently, he petitioned the court for transitional release. The district court determined that Sebek failed to show probable cause to believe he was safe to be returned to the community through the transitional release program of the Kansas Sexually Violent Predator Act (KSVPA), K.S.A 59-29a01 et seq. Sebek's appeal of that decision brings the matter to us.

Sebek was imprisoned at the Lansing Correctional Facility following his 2002 convictions for aggravated indecent liberties with a child less than 14 years old and aggravated indecent solicitation of a child less than 14 years old. He was scheduled for release from prison in February 2012. In January 2012, about two weeks before his scheduled release, the State petitioned the court to have him held for proceedings under the KSVPA with the ultimate goal of having him held "in a secure facility for control,

1

care and treatment until such time as his mental abnormality or personality disorder has so changed that he is safe to be at large."

In July 2012 Sebek stipulated that if the matter went to trial, the State would be able to show beyond a reasonable doubt that Sebek met the KSVPA criteria of a sexually violent predator. The court accepted Sebek's stipulation, adjudicated him to be a sexual predator, and ordered him to be committed to the Larned State Hospital for treatment. Thereafter, Sebek's treatment providers prepared annual reports on Sebek's mental condition and notified Sebek of his right to petition for release from treatment.

Sebek did not exercise his review rights under K.S.A. 59-29a08(a) for several of those years. He did exercise that right in September 2020. The district court held a hearing on Sebek's motion in August 2021, during which it concluded that Sebek failed to establish probable cause to believe that he was safe to be placed in transitional release.

Meanwhile, Sebek's yearly examination for the following year—2021—was completed in July 2021. The report of that examination concluded that Sebek remained a sexually violent predator. Sebek petitioned for another formal annual review. In November 2021, the district held a nonevidentiary hearing on Sebek's motion.

At the hearing, the State asked the district court to deny Sebek's motion based on the conclusion of the 2021 annual examination report that Sebek remained a sexually violent predator. Sebek argued that a January 2021 report by Dr. Gregory Nawalanic, an independent psychological evaluator appointed by the court, concluded, as recounted in court, that Sebek "does not have the tendencies of being a pedophile or really even a sex offender, [but] that he's antisocial and is likely to get in some sort of perhaps criminal trouble because of that." Sebek contended that his antisocial diagnosis explained why he had trouble conforming to the hospital's rules. He argued that he should be released from Larned and placed on parole because he should be treated for antisocial tendencies, not

for being a sexually violent predator. The district court denied Sebek's latest motion, concluding that Sebek failed to show probable cause to believe he was safe to be placed in transitional release.

Sebek appeals, contending that the district court erred in concluding that he failed to demonstrate probable cause to believe he was safe to be placed in transitional release. We review de novo this decision by the district court. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012).

Sebek had the burden at the probable cause hearing to establish that the facts, viewed in the light favoring him, were "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [his] mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release." 296 Kan. at 226.

Sebek argues that his "2021 Annual Review demonstrates considerable improvement over the one in 2020." As support, Sebek points to his improved attendance in group therapy classes, his consistency in turning in self-analysis reports, his decreased behavior notifications, his score on the Static-99R test, and his score on the ACUTE-2007 test going from eight to four.

True, Sebek's 2021 annual examination report showed—and the district court acknowledged—some improvement from the year before. Even so, the district court concluded that Sebek failed to establish probable cause based on the other conclusions in the 2021 annual examination report.

As reported in Sebek's 2021 annual report, he failed to participate in or complete portions of his treatment program, such as polygraph examinations and his relapse

3

prevention plan. As such, under K.S.A. 2021 Supp. 59-29a08(d), Sebek "is presumed to be unable to show probable cause to believe the person is safe to be released."

Sebek's most current test scores were not helpful to him. The annual examination report referred to the Static-99R test as "an actuarial instrument used to estimate the probability that a convicted adult male sex offender will reoffend against a child or non-consenting adult." Sebek scored a +5 on the Static-99R, which placed him in the "Above Average Risk" category. On the ACUTE-2007 test, which is another risk assessment tool that measures seven dynamic factors of acute risk vulnerability, Sebek had a total score of four and a sexual violence score of four. His total score corresponded to "a High priority for general recidivism risk." His sexual violence score corresponded to "a High priority for sex and violence risk." The examination report described the STABLE-2007 as "an actuarial instrument developed to assess change in intermediate-term risk status, assess treatment needs, and help predict recidivism in sexual offenders." Using this instrument Sebek scored a 12, placing him in the "High Treatment Needs" category. Taken together, Sebek's test scores placed him in a "'High' risk/need category."

Sebek also received at least one notification for aggressive or sexually inappropriate behavior. The hospital staff "noted a number of concerning behaviors over the last year, including fighting with peers, assault on staff, threatening peers, yelling, following female staff, disrespecting staff, arguing with staff, not following staff direction or redirection, threatening staff, and punching doors." As a result of this behavior, Sebek was put on security risk status and placed in the behavioral unit for some time. Of the four privilege levels in the sexual predator treatment program, Sebek had the lowest privilege level—a decline from the previous year when he had the third lowest privilege level.

Based on Sebek's conduct and test results detailed in the 2021 annual examination report, we conclude that the district court did not err in finding that Sebek failed to meet

4

his burden of establishing that there was probable cause to believe that he was safe to be returned to the community through transitional release.

Affirmed.